**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. ____________________

VERONICA KATZ and SIMON KATZ,

Plaintiffs,

v.

GL HOMES OF PALM BEACH ASSOCIATES, LTD.,
BOCA RATON ASSOCIATES X, LLLP d/b/a LOTUS EDGE, and
BOCA RATON ASSOCIATES IX, LLLP d/b/a LOTUS PALM,

Defendants.
________________________________________________________/

# COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs VERONICA KATZ and SIMON KATZ sue Defendants GL HOMES OF PALM BEACH ASSOCIATES, LTD., BOCA RATON ASSOCIATES X, LLLP d/b/a LOTUS EDGE, and BOCA RATON ASSOCIATES IX, LLLP d/b/a LOTUS PALM, and allege as follows.

## NATURE OF THE ACTION

1. This is an action for religious discrimination in housing. Plaintiffs Veronica and Simon Katz are Jewish. In December 2023 they purchased a home from Defendants in Lotus Palm, a new-construction community in Boca Raton, Florida. In June 2024 they sought to enter Defendants' lottery to purchase a home in Lotus Edge, an adjacent luxury community developed and sold by Defendants, and offered to pay the required $10,000 lottery deposit.

2. Defendants refused to accept Plaintiffs' money and barred them from the Lotus Edge lottery. Defendants characterized the refusal as a "business decision" arising from a "very difficult transaction" at Lotus Palm. That characterization was pretextual.

3. The record of Defendants' conduct toward Plaintiffs is a record of religious animus. Defendants' Assistant General Counsel told Simon Katz that Veronica Katz "act[s] like a Jewish princess." When Simon Katz asked why that view of his wife should bear on his own eligibility to purchase, she answered that they were "one and the same and share the same core beliefs," and terminated the call. When Plaintiffs sought a brief extension of their Lotus Palm closing to observe Hanukkah and to attend to family in Israel following the October 7, 2023 attacks, Defendants told them they were "not special," dismissed the situation in Israel as of no concern, searched Simon Katz's social media — on which he displays an Israeli flag and expresses support for Israel — and used a photograph of a Halloween outing to accuse Plaintiffs of insincerity about their religious observance and their concern for family in Israel. Defendants imposed a penalty of approximately $15,000 for the brief delay while granting extensions to comparable non-Jewish purchasers without penalty.

4. Plaintiffs bring claims under the Fair Housing Act, 42 U.S.C. §§ 3604(a), 3604(b), 3604(c), and 3617; under 42 U.S.C. § 1982; and under the Florida Fair Housing Act, Fla. Stat. §§ 760.20–760.37.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3)–(4), and under 42 U.S.C. § 3613(a).

6. This Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative fact.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiffs' claims occurred in Palm Beach County, Florida, and the housing at issue is located there. Venue is proper in the West Palm Beach Division under Local Rule 3.1.

## PARTIES

8. Plaintiff Veronica Katz is an adult individual. She is Jewish. She is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i).

9. Plaintiff Simon Katz is an adult individual. He is Jewish. He is an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i).

10. Plaintiffs are married to one another and have three young children.

11. Defendant GL Homes of Palm Beach Associates, Ltd. ("GL Homes") is a Florida limited partnership with its principal place of business at 1600 Sawgrass Corporate Parkway, Suite 400, Sunrise, Florida 33323. GL Homes develops, markets, and sells residential housing in Palm Beach County, including the Lotus Palm and Lotus Edge communities. At all material times, Kara Babcock and Vanessa Mount acted within the course and scope of their employment or agency for GL Homes.

12. Defendant Boca Raton Associates X, LLLP d/b/a Lotus Edge is a Florida limited partnership that develops, markets, and sells residential housing in the Lotus Edge community in Boca Raton, Palm Beach County, Florida.

13. Defendant Boca Raton Associates IX, LLLP d/b/a Lotus Palm is a Florida limited partnership that developed, marketed, and sold residential housing in the Lotus Palm community in Boca Raton, Palm Beach County, Florida, including the home Plaintiffs purchased.

14. The homes at issue are "dwellings" within the meaning of 42 U.S.C. § 3602(b). Defendants are "persons" within the meaning of 42 U.S.C. § 3602(d).

15. At all material times, Kara Babcock was employed by Defendants as Project Manager for Lotus Palm. At all material times, Vanessa Mount was employed by Defendants as Assistant General Counsel. Defendants are vicariously liable for the acts and omissions of Babcock and Mount undertaken within the course and scope of their employment or agency.

## FACTUAL ALLEGATIONS

### A. Plaintiffs' purchase at Lotus Palm and Defendants' response to their religious observance

16. Plaintiffs are Jewish. Simon Katz publicly identifies as Jewish and publicly expresses support for Israel, including by displaying an Israeli flag on his social media account.

17. In or about 2023, Plaintiffs contracted to purchase a newly constructed home from Defendants at Lotus Palm in Boca Raton, Florida. The purchase price was approximately $2,126,064. Plaintiffs obtained mortgage pre-approval from HomeXpress Mortgage Corp.

18. Plaintiffs resided in California and intended to relocate to Florida. Veronica Katz intended to start a business in Boca Raton.

19. On October 7, 2023, Hamas attacked Israel. Plaintiffs have family in Israel. In the weeks that followed, Plaintiffs were engaged in locating missing relatives in Israel, and Simon Katz planned to travel there.

20. In or about October 2023, Veronica Katz advised Vanessa Mount that, because of the October 7 attack and its effect on their family, Plaintiffs might require several additional weeks to complete their closing. Mount responded that the situation in Israel was of no concern to her.

21. Plaintiffs also requested a brief extension of the closing date in order to observe Hanukkah, and because holiday-season delays affecting appraisers, underwriters, and title personnel had slowed the loan process. Plaintiffs' loan officer confirmed in writing that the loan required only approximately two additional weeks.

22. Defendants denied the request. Defendants' personnel told Plaintiffs they were "not special," and that Hanukkah and the conflict in Israel did not justify any delay in closing.

23. Upon learning that Plaintiffs had requested additional time on account of the situation in Israel, Mount searched Simon Katz's Instagram account. She then asserted that a photograph of a Halloween outing demonstrated that Plaintiffs were "phony" and had no genuine concern for Israel, and that Simon Katz's representations about traveling to Israel were untrue.

24. On or about November 1, 2023, Kara Babcock wrote to Veronica Katz: "We take the current circumstances in Israel very seriously. On October 23rd you represented to us that your husband had to fly out and take care of his family. Based on that representation, we extended your closing to occur on November 10th. Your email on October 30th again represented that your husband is not in the country. Yet social media shows that your husband was in San Francisco this past weekend, contrary to your representations."

25. Mount communicated her conclusions about Plaintiffs' social media to third parties, including personnel involved in Plaintiffs' financing. Plaintiffs' lender found the conduct sufficiently troubling to seek the advice of an attorney, Matthew I. Kramer.

26. On or about November 14, 2023, Kramer transmitted to Mount the lender's written pre-approval confirming Plaintiffs' financing and requesting a short extension of the closing to December 15, 2023.

27. On or about November 15, 2023, Mount responded that the pre-qualification "is subject to conditions and does not give Seller confidence." Plaintiffs' loan officer was offended by Defendants' communications and expressed the view that Mount held a personal vendetta against Plaintiffs.

28. Defendants imposed a penalty of approximately $15,000 on Plaintiffs in connection with the brief extension of their closing.

29. Defendants granted closing extensions to other purchasers, including at least one purchaser identified as Yana Rudakov, for reasons unrelated to religious observance, without imposing penalties or fees.

30. Plaintiffs closed on the Lotus Palm home, located at 8566 Shoreacres Street, Boca Raton, Florida 33434, on or about December 15, 2023.

**B. Defendants' exclusion of Plaintiffs from Lotus Edge**

31. Defendants subsequently developed and began marketing Lotus Edge, a luxury community in Boca Raton. Because demand exceeded supply, Defendants allocated purchase opportunities through a lottery requiring a $10,000 deposit to enter.

32. Plaintiffs intended to purchase a home in Lotus Edge as their primary residence and to relocate their family, including their three young children, to Florida.

33. On or about June 26, 2024, Plaintiffs visited Defendants' sales office, located within the Lotus Palm community, to inquire about the Lotus Edge lottery. Plaintiffs parked in a designated accessible parking space, displaying a valid disability parking placard. Defendants' personnel exhibited visible irritation at Plaintiffs' use of that space.

34. While Plaintiffs were in the sales office, their two-year-old son spilled water on the floor. Defendants' representative directed Veronica Katz to clean the spill herself. Veronica Katz

requested a mop. Defendants' representative instead provided a few paper napkins, and Veronica Katz cleaned the floor on her hands and knees, notwithstanding that Defendants maintained janitorial staff.

35. Plaintiffs advised Defendants that they wished to enter the Lotus Edge lottery and were prepared to pay the required $10,000 deposit.

36. On or about June 27, 2024, Kara Babcock telephoned Plaintiffs and advised them that Defendants would not accept their money and had "made a business decision" not to permit their family to enter the Lotus Edge lottery. Babcock stated that Plaintiffs were "not a fit" for the Lotus Edge community, and that Plaintiffs were "not permitted" in Lotus Edge. Babcock declined to identify any person above her within the organization and refused to provide corporate contact information.

37. Vanessa Mount thereafter telephoned Simon Katz. She stated that the refusal was based on "prior conduct" and the difficulty of Plaintiffs' prior closing. When Simon Katz asked her to explain, she refused and terminated the call.

38. During that call, Mount remarked that Veronica Katz "act[s] like a Jewish princess." Mount stated that she did not want to consider either Plaintiff for the Lotus Edge lottery. When Simon Katz asked why Mount's dislike of his wife should affect his own ability to purchase a home, Mount answered: "you are one and the same and share the same core beliefs." When Simon Katz asked what that meant, Mount stated that she would end the call and would not entertain the conversation further.

39. On June 28, 2024, at approximately 8:24 a.m., Simon Katz emailed Marcie DePlaza, identified to him as Vice President of Sales, describing the exclusion and requesting

review. At approximately 8:49 a.m. that morning, he emailed Misha Ezratti and Terry Lillian to the same effect. Neither communication produced any reconsideration.

40. On June 28, 2024, at approximately 11:14 a.m., Veronica Katz emailed Vanessa Mount, stating that she had been told Plaintiffs were "no longer allowed to purchase a home with GL due to a dislike for me," that she had never been made aware of any code of conduct she had violated, and that she believed she was being retaliated and discriminated against for her requests and concerns during the Lotus Palm purchase.

41. On June 28, 2024, at approximately 12:24 p.m., Mount replied on behalf of Defendants: "We want you to understand that this is not based on a 'dislike' for you or Mr. Katz, nor are we discriminating or retaliating in any way. This is simply a business decision resulting from the fact that we had a very difficult transaction with you at Lotus Palm and we do not want a similar situation at Lotus Edge. As a result, the business decision has been made not to enter into another transaction. We want you to know that as this decision is final, Kara will not be returning your call or scheduling a meeting."

42. June 28, 2024 is the date on which Defendants communicated their final refusal, and is the date on which the discriminatory housing practice alleged herein occurred and terminated.

43. Defendants' stated "business decision" rationale is a pretext for discrimination on the basis of Plaintiffs' religion. The "very difficult transaction" Defendants invoke consisted of Plaintiffs' requests for a brief closing extension to observe a Jewish holiday and to attend to family in Israel — requests Defendants met with the statements and conduct described above.

44. But for Plaintiffs' religion, Defendants would have accepted Plaintiffs' $10,000 deposit and permitted them to enter the Lotus Edge lottery on the same terms as other prospective purchasers.

45. As a direct and proximate result of Defendants' conduct, Plaintiffs lost the opportunity to purchase and occupy a home in Lotus Edge, lost the opportunity to reside near family in the Boca Raton community, incurred the approximately $15,000 penalty imposed in connection with the Lotus Palm closing, and suffered humiliation, emotional distress, and loss of dignity.

**C. Administrative proceedings and tolling of the limitations period**

46. On October 16, 2024, Plaintiffs executed a Housing Discrimination Complaint under penalty of perjury, alleging discrimination on the basis of religion in violation of the Fair Housing Act, and identifying June 28, 2024 as the most recent date on which the alleged discrimination occurred.

47. On October 21, 2024, Plaintiffs filed that complaint with the United States Department of Housing and Urban Development ("HUD"). The complaint designated undersigned counsel as Complainant Representative and set forth counsel's firm name, mailing address, telephone number, and two email addresses.

48. HUD accepted the complaint, assigned it number 800399, and docketed it under the caption "Katz, Veronica and Simon Katz v Boca Raton Associates IX, LLLP."

49. HUD thereafter issued a written request to Plaintiffs for additional information, comprising eleven substantive inquiries concerning the events of June 28, 2024, the denial of the closing extension, the identities of Defendants' personnel, comparator purchasers, and the factual basis for Plaintiffs' religious-discrimination allegations.

50. On November 20, 2024, Plaintiffs submitted a five-page written response to HUD's request, together with documentary exhibits including the contemporaneous email correspondence quoted above.

51. HUD has since asserted that it closed the matter on November 20, 2024 — the same date on which Plaintiffs' supplemental submission was made.

52. HUD never served any notice of closure, determination, or dismissal on Plaintiffs. HUD never served any such notice on Plaintiffs' designated representative of record. Plaintiffs and their counsel received no notice from HUD that the matter had been closed.

53. HUD never notified Plaintiffs in writing of the reasons for its failure to complete an investigation within 100 days of the filing of the complaint, as required by 42 U.S.C. § 3610(a)(1)(B)(iv).

54. Throughout 2025, counsel for Plaintiffs submitted written status inquiries to HUD concerning complaint number 800399. HUD did not respond to those inquiries.

55. In December 2025, HUD advised counsel for Plaintiffs that the complaint remained under review.

56. Plaintiffs and their counsel reasonably relied on HUD's representations and on the absence of any notice of closure, and reasonably believed that the administrative proceeding remained pending.

57. On July 7, 2026, counsel for Plaintiffs again wrote to HUD requesting clarification of the status of complaint number 800399.

58. In July 2026, HUD responded in writing. HUD stated that "[t]he complaint was reviewed during the intake phase and was not referred for investigation because the information provided did not meet the requirements for our office to open an investigation." With

respect to the December 2025 communication and subsequent communications, HUD stated that its "office was experiencing a significant backlog of cases at that time, which may have contributed to the delay in providing a status update." HUD's response did not assert that any notice of closure had ever been transmitted to Plaintiffs or to their representative of record.

59. The proceeding on Plaintiffs' complaint was pending before HUD, within the meaning of 42 U.S.C. § 3613(a)(1)(B), from October 21, 2024 until, at the earliest, November 20, 2024, a period of at least thirty days. That period is excluded from the computation of the two-year limitations period established by 42 U.S.C. § 3613(a)(1)(A).

60. Because a proceeding is not terminated for purposes of 42 U.S.C. § 3613(a)(1)(B) until the aggrieved person and the person's representative of record are notified of its termination, and because HUD affirmatively represented in December 2025 that the complaint remained under review, the administrative proceeding remained pending well beyond November 20, 2024, and the period excluded from the limitations computation is correspondingly longer.

61. In the alternative, the limitations period is subject to equitable tolling. HUD failed to serve any notice of closure on Plaintiffs or their representative of record; failed to respond to counsel's status inquiries throughout 2025; and affirmatively advised counsel in December 2025 that the complaint remained under review. HUD has acknowledged in writing that its own backlog contributed to its failure to provide an accurate status. Plaintiffs exercised diligence throughout and were prevented from learning of the closure by circumstances entirely outside their control.

62. HUD's determination not to refer the complaint for investigation has no preclusive effect on this action. Under 42 U.S.C. § 3613(a)(2), an aggrieved person may commence a civil

action whether or not a complaint has been filed with HUD and without regard to the status of any such complaint, except where a conciliation agreement has been executed. No conciliation agreement was executed in this matter.

**<u>COUNT I</u>**
**Discriminatory Refusal to Sell or Negotiate — 42 U.S.C. § 3604(a)**
**(*As to All Defendants)***

63. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

64. Section 3604(a) of the Fair Housing Act makes it unlawful to refuse to sell or rent, to refuse to negotiate for the sale or rental of, or otherwise to make unavailable or deny, a dwelling to any person because of religion.

65. Plaintiffs are members of a class protected by the Fair Housing Act on the basis of religion. They are Jewish.

66. Plaintiffs applied to enter Defendants' lottery for the purchase of a dwelling at Lotus Edge, were qualified and financially able to purchase, and tendered the required $10,000 deposit.

67. Defendants refused to accept Plaintiffs' deposit, refused to permit Plaintiffs to enter the lottery, refused to negotiate for the sale of any dwelling at Lotus Edge, and otherwise made dwellings at Lotus Edge unavailable to Plaintiffs.

68. Dwellings at Lotus Edge remained available to other prospective purchasers on the terms Defendants denied to Plaintiffs.

69. Defendants' refusal was because of Plaintiffs' religion. Defendants' stated "business decision" rationale is pretextual.

70. As a direct and proximate result, Plaintiffs suffered the injuries described above.

**<u>COUNT II</u>**
**Discrimination in Terms, Conditions, and Privileges — 42 U.S.C. § 3604(b)**
**(*As to All Defendants)***

71. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

72. Section 3604(b) of the Fair Housing Act makes it unlawful to discriminate against any person in the terms, conditions, or privileges of the sale of a dwelling, or in the provision of services or facilities in connection therewith, because of religion.

73. Defendants discriminated against Plaintiffs in the terms, conditions, and privileges of the sale of a dwelling, and in the provision of services in connection therewith, by denying Plaintiffs the closing extension routinely afforded to comparable purchasers; by imposing a penalty of approximately $15,000 on Plaintiffs for a brief extension while granting extensions to comparable purchasers without penalty; by disparaging Plaintiffs' religious observance and their concern for family in Israel; by subjecting Plaintiffs' representations concerning religious observance to scrutiny and disbelief not applied to other purchasers; by surveilling Simon Katz's social media and using its contents to impugn Plaintiffs' sincerity; by communicating disparaging assertions about Plaintiffs to third parties involved in Plaintiffs' financing; and by excluding Plaintiffs from the lottery process available to other prospective purchasers.

74. Defendants' conduct was because of Plaintiffs' religion.

75. As a direct and proximate result, Plaintiffs suffered the injuries described above.

## COUNT III
**Discriminatory Statements — 42 U.S.C. § 3604(c)**
**(*As to All Defendants)***

76. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

77. Section 3604(c) of the Fair Housing Act makes it unlawful to make, print, or publish, or cause to be made, printed, or published, any notice, statement, or advertisement with respect to the sale of a dwelling that indicates any preference, limitation, or discrimination

based on religion, or an intention to make any such preference, limitation, or discrimination.

78. Defendants, through their agents and employees acting within the scope of their employment, made statements with respect to the sale of dwellings that indicated a preference, limitation, and discrimination based on religion, and an intention to discriminate on that basis, including: that Veronica Katz "act[s] like a Jewish princess"; that Plaintiffs were "one and the same and share the same core beliefs"; that Plaintiffs were "not special" when they requested time to observe Hanukkah; that the conflict in Israel was of no concern to Defendants; that Plaintiffs' social media demonstrated that their expressed concern for family in Israel was "phony"; that Plaintiffs were "not a fit" for the Lotus Edge community; and that Plaintiffs were "not permitted" in the Lotus Edge community.

79. These statements would suggest to an ordinary listener that Defendants preferred not to sell dwellings to Jewish purchasers.

80. As a direct and proximate result, Plaintiffs suffered the injuries described above.

**COUNT IV**
**Interference, Coercion, and Retaliation — 42 U.S.C. § 3617**
**(*As to All Defendants*)**

81. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

82. Section 3617 of the Fair Housing Act makes it unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of that person's having exercised or enjoyed, any right granted or protected by 42 U.S.C. §§ 3603 through 3606.

83. Plaintiffs engaged in activity protected by the Fair Housing Act, including requesting accommodation of their religious observance in connection with the Lotus Palm closing,

objecting to Defendants' disparate treatment of that request, objecting to Defendants' surveillance of Simon Katz's social media and Defendants' statements concerning Plaintiffs' religion, and complaining of discrimination to Defendants' management on June 28, 2024.

84. Defendants coerced, intimidated, threatened, and interfered with Plaintiffs on account of that protected activity, including by imposing a monetary penalty, by disparaging Plaintiffs to third parties involved in their financing, by excluding Plaintiffs from the Lotus Edge lottery on the express ground of "prior conduct" and the "very difficult transaction" constituted by Plaintiffs' requests and objections, by refusing to explain or reconsider the exclusion, and by declaring the decision final and refusing further communication.

85. As a direct and proximate result, Plaintiffs suffered the injuries described above.

**<u>COUNT V</u>**
**Denial of Equal Right to Purchase Real Property — 42 U.S.C. § 1982**
**(*As to All Defendants)***

86. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

87. Section 1982 provides that all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

88. Discrimination against Jewish persons on the basis of their Jewish ancestry or ethnicity is actionable under Section 1982. See Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987).

89. Plaintiffs are citizens of the United States and are Jewish.

90. Defendants intentionally denied Plaintiffs the same right to purchase real property enjoyed by other citizens, on account of Plaintiffs' Jewish ancestry and ethnicity, by refusing to

accept Plaintiffs' deposit, excluding them from the Lotus Edge lottery, and refusing to enter into any transaction with them.

91. As a direct and proximate result, Plaintiffs suffered the injuries described above.

**COUNT VI**
**Florida Fair Housing Act — Fla. Stat. §§ 760.23, 760.37**
**(*As to All Defendants)***

92. Plaintiffs reallege and incorporate paragraphs 1 through 62 as though fully set forth herein.

93. The Florida Fair Housing Act, Fla. Stat. § 760.23(1)–(3), prohibits refusing to sell or negotiate for the sale of a dwelling, discriminating in the terms, conditions, or privileges of sale, and making discriminatory statements with respect to the sale of a dwelling, because of religion. Section 760.37 prohibits coercion, intimidation, threats, and interference on account of the exercise of rights granted by the Act.

94. For the reasons set forth in Counts I through IV, Defendants violated Fla. Stat. §§ 760.23 and 760.37.

95. Plaintiffs may bring this action under Fla. Stat. § 760.35(1), which permits an aggrieved person to commence a civil action within two years after the alleged discriminatory housing practice, excluding any time during which an administrative proceeding under the Act was pending, whether or not a complaint has been filed with the Florida Commission on Human Relations.

96. As a direct and proximate result, Plaintiffs suffered the injuries described above.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Veronica Katz and Simon Katz respectfully request that this Court:

a. Declare that Defendants' conduct violated the Fair Housing Act, 42 U.S.C. § 1982, and the Florida Fair Housing Act;

b. Enjoin Defendants from further discrimination on the basis of religion, and order such affirmative relief as is necessary to remedy the effects of Defendants' conduct, including affording Plaintiffs the opportunity to purchase a dwelling at Lotus Edge on nondiscriminatory terms;

c. Award Plaintiffs compensatory damages, including damages for economic loss, lost housing opportunity, humiliation, emotional distress, and loss of dignity;

d. Award Plaintiffs punitive damages;

e. Award Plaintiffs their reasonable attorney's fees and costs under 42 U.S.C. §§ 3613(c)(2) and 1988, and Fla. Stat. § 760.35(2);

f. Award prejudgment interest; and

g. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Respectfully Submitted this July 29, 2026.

By: *_/s/ J. Courtney Cunningham_*
Juan Courtney Cunningham, Esq.
FBN: 628166
**J. COURTNEY CUNNINGHAM, PLLC**
8950 SW 74th Court, Suite 2201
Miami, Florida 33156
T: 305-351-2014
cc@cunninghampllc.com
legal@cunninghampllc.com